UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **GREG STEVENS** | **CIVIL ACTION NO. 19-0822** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN CHAD LEE** | **MAG. JUDGE KAREN L. HAYES** |

## SUPERSEDING REPORT AND RECOMMENDATION

The instant Report and Recommendation supersedes and replaces the undersigned's August 14, 2019 Report and Recommendation, [doc. # 11]. Perforce, the August 14, 2019 Report and Recommendation is rescinded.

Plaintiff Greg Stevens, a detainee at Franklin Parish Detention Center ("FPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on May 14, 2019, under 42 U.S.C. § 1983. He names Warden Chad Lee as Defendant.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff alleges that, on July 17, 2018, at approximately 11:00 p.m., FPDC guards searched "A-Dorm" and found two cellular telephones. [doc. # 1, p. 3]. At approximately 11:20 p.m. the same day, several convicted inmates attacked Plaintiff. *Id.* The inmates beat Plaintiff because the guards allegedly told them that Plaintiff gave the guards a note about the telephones. *Id.* at 4. Plaintiff suffered a swollen and bruised eye, a swollen and bruised nose, a cut on the left

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

side of his head, a knot on the back of his head, and loose teeth. [doc. # 8-1, p. 5]. Plaintiff faults Warden Lee because Lee "is responsible for the operation 'and the method or manner of functioning' of the detention center." *Id.* at 3.

Following the attack, Plaintiff was "given a small towel to clean the blood off of [his] face and to control the blood from a cut on [his] head." [doc. # 1, p. 4]. Plaintiff told the guards that his head hurt, and he asked for medical assistance. *Id.* He was given some Ibuprofen, but "no further medical assistance was provided." *Id.* In Plaintiff's second amended pleading, he alleges that he asked a guard for medical assistance, but he "was denied." [doc. # 12, p. 1].

Plaintiff did not receive care the following day, July 18, 2018. [doc. # 1, p. 4]. He asked Lieutenant Charles Johnson for "medical assistance," but he "was denied." [doc. # 12, p. 1]. He "was informed that, to receive medical assistance, [he] would have to wait until the next morning and turn in a medical request form to see the nurse." [doc. # 1, p. 4].

On "July 19, 2018, at 6:00 a.m., [he] turned in a medical request form." *Id.* "When the nurse called [him] out[,] it had been 33 hours since [he] was attacked, hurt, and requested medical assistance." *Id.* He told the nurse about his injuries and his head pain, but the nurse simply charged him $5.00 and arranged an appointment with a physician. *Id.* The same day, at approximately 1:20 p.m., a nurse practitioner treated and released Plaintiff. [doc. # 8-1, p. 4].

Later on July 19, 2018, a physician examined Plaintiff and provided x-rays, shots, and a prescription. [doc. #s 8-1, p. 4; 12, p. 4]. Plaintiff continues to suffer from "mental health issues that include, but are not limited to, anxiety, nervousness, stress, agitation, and fear." [doc. # 8-1, p. 4]. He writes, "I was denied mental health assistance." *Id.*

On July 20, 2018, Plaintiff requested "'Victims Rights Assistance'" for his mental anguish following the attack, but he was "denied this right." [doc. # 1, p. 4]. He alleges, in his

2

second amended pleading that he requested "Victims Rights Assistance" from Warden Lee via letter. [doc. # 12, p. 1]. Plaintiff attaches a letter, addressed "to whom it may concern," in which he asked "the proper authorities to be notified that [he was] requesting R.S. 46:1843 eligibility of victim, and R.S. 46:1844 basic rights for victim be applied to [him] because of the recent attack [he] suffered on July 17, 2018 . . . ." [doc. # 12-2, p. 3].

On October 7, 2018, Plaintiff informed Warden Lee that a detainee who lived in his dorm threatened him. [doc. # 1, p. 5]. Plaintiff claims that "no one ever inquired about the threat" and that, on October 14, 2018, the detainee attacked him. *Id.* Plaintiff was "written up even though the video surveillance footage clearly show[ed] the detainee attacking [him]." *Id.* A disciplinary court sentenced Plaintiff to one month with no visitation, "but the sentence imposed was suspended." *Id.*

Plaintiff was then "left in the hole for twenty-five days," even though he was not sentenced to "the hole." *Id.* He writes in his second amended pleading that he was placed in the hole "for no apparent reason except for punishment." [doc. # 12, p. 1]. There, he suffered mental anguish, emotional distress, and embarrassment because he was forced to use the toilet near others who could reach and view him, because he was "hardly ever let out of the cell," and because the cell was crowded, deplorable, unsanitary, and freezing. [doc. #s 1, p. 5; 12, p. 8].

Plaintiff claims further that, from March 2018 until now, he has "not been able to obtain case law/citations from the law library[,]" which rendered him unable to adequately litigate a state court application for "writ of habeas corpus" and "other constitutional violations." [doc. # 1, p. 5]. Plaintiff asked Warden Lee for permission to "receive case law from the law library clerk . . . ." *Id.*

Plaintiff seeks $1,500,000.00 for his physical injuries, for his mental anguish as a result

3

of the "assault and battery," and for "the lack of care." [doc. #s 1, p. 5; 12, p. 3].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788

F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Failure to Protect**

On October 7, 2018, Plaintiff informed Warden Lee that an unidentified detainee who lived in his dorm threatened him. [doc. # 1, p. 5]. Plaintiff also attaches an October 7, 2018 letter to Warden Lee, in which he stated that a "19 year old kid in here has threatened me." [doc. # 12-2, p. ].[3] Plaintiff claims that "no one ever inquired about the threat" and that, on October 14, 2018, the detainee attacked him and injured his eye. [doc. #s 1, p. 5; 12, p. 2].

To state a claim, Plaintiff must allege that Warden Lee's inaction amounted to deliberate indifference. That is, he must allege that Warden Lee "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

Plaintiff does not explain how Warden Lee knew of a substantial risk of serious harm. While Plaintiff informed Warden Lee that the detainee threatened him, he does not detail the extent or substance of the threat. See *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018) ("Although Vela claims the HCJ personnel put him in danger by ignoring the prisoner's threats

---

[3] In the same letter, Plaintiff informed Warden Lee that "some inmates" were "conspiring to get [him] moved out." *Id.*

6

and releasing him into the dorm, he does not allege they acted with the requisite deliberate indifference. . . . In other words, Vela does not maintain they were aware of facts that lead to the inevitable conclusion he was exposed to substantial danger."). Plaintiff suggests that Warden Lee was aware of a risk but, under Plaintiff's allegations, Lee was not aware of a substantial risk. See *Jason v. Tanner*, 2019 WL 4252240, at *4 (5th Cir. Sept. 9, 2019).

While Plaintiff does not mention it in the body of his pleadings, Plaintiff attaches a letter, dated August 14, 2018, in which he informed Warden Lee that "an inmate named Lance ? a guy that sleeps in bed No. 15 has threatened me twice. [sic]." [doc. # 12-2, p. 5]. He added that the inmate threatened him with bodily harm. *Id.* Plaintiff, however, does not claim that the warden failed to protect him from this inmate, that this is the threat the warden failed to investigate, or that this inmate is the detainee who threatened, and subsequently attacked him, approximately two months later.[4]

Accordingly, the Court should dismiss this claim.

### 3. Access to Court

Plaintiff claims that, from March 2018 until now, he has "not been able to obtain case law/citations from the law library[,]" which rendered him unable to adequately litigate his "writ of habeas corpus" and "other constitutional violations." [doc. # 1, p. 5]. Plaintiff asked Warden

---

[4] Plaintiff also alleges that inmate-on-inmate violence is rampant at FPDC and that Warden Lee is aware of the violence. [doc. # 12, p. 6]. However, this additional, generalized allegation does not confer additional plausibility on Plaintiff's claim because Plaintiff must allege that a defendant was deliberately indifferent to *his* safety. See *Williams v. Martin*, 570 F. App'x 361, 365 (5th Cir. 2014) (finding that the Williams did not state a claim because he "alleged only that defendants failed to curb abuse of prisoners" and did not allege that "prison officials acted with deliberate indifference to [his] safety."); *Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) ("the vague contention by Silva that, although the defendants knew of previous violent incidents, they declined to take unspecified protective measures to prevent future attacks such as the one on him, does not show that any risk to Silva was clear to the officers. ").

7

Lee for permission to "receive case law from the law library clerk . . . because no one is allowed to do any research." *Id.*

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher v. Harbury*, 536 U.S. 403, 417-18 (2002).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher*, 536 U.S. at 413-14).

"To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous

underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); see *Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

With respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017).

A. <u>Access to Court to Litigate "Other Constitutional Violations"</u>

Plaintiff first claims that, because he could not obtain case citations from the law library, he could not adequately litigate "other constitutional violations." [doc. # 1, p. 5]. In his amended pleading, Plaintiff states that the claims he could not litigate are the claims he filed before this Court. [doc. # 12, p. 12].

9

Plaintiff does not, however, sufficiently identify the constitutional claims that he could not adequately litigate. Plaintiff raised many claims before this Court, some of which the Court dismissed as frivolous. More important, he does not identify which, of the many claims he raised, that he could not or cannot adequately litigate without access to a law library.

He does not identify a non-frivolous, arguable claim that he could not raise, that he raised and lost, or for which he could not obtain a remedy. See *Sanchez*, 689 F. App'x at 799 ("His assertions that he has been hindered in presenting claims challenging his criminal conviction and prison disciplinary cases are conclusory. He fails to describe the claims with the particularity needed to evaluate whether they were nonfrivolous and does not explain with specificity how the absence of legal materials and assistance in Spanish actually hindered those claims.").

B. Access to Court to Litigate an Application for a Writ of Habeas Corpus

Next, Plaintiff claims that, because Warden Lee impeded his access to the law library, he was unable to effectively litigate an Application for Writ of Habeas Corpus that he filed in May 2018, before the Fifth Judicial District Court, Parish of Franklin, State of Louisiana. [doc. # 8-1, pp. 11-15]. Plaintiff elaborated on the context of his application in another proceeding he filed before this Court, *Greg Stevens v. Ann Johnson, et al.*, 3:19-cv-0452 (W.D. La. 2019). There, the undersigned observed: "Plaintiff maintains that he filed the application for writ of habeas corpus because, in his underlying criminal proceeding, he was not appointed counsel prior to the deadline for appointing counsel.[5] . . . Plaintiff has pending charges of second-degree

---

[5] Presumably, Plaintiff refers to LA. CODE CRIM. PRO. art. 230.1(A), which provides: "The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel." "If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released on his own recognizance." *Id.* § (C).

10

kidnapping, second-degree rape, and second-degree battery. He filed his application for writ of habeas corpus to secure release in connection with all of these charges." *Id.* at doc. 26 (footnote in original).

There are several reasons why Plaintiff fails to state a plausible claim. First, while Plaintiff lost his habeas corpus action before the trial court, he does not plausibly allege here that he lost *because* of his inability to either access the facility's law library or obtain case law. Plaintiff does not allege, for instance, how access to the law library would have aided him, "how he would have proceeded with access to a law library," what specific cases or law he would have cited if he had access to the law library, "or how [his] claims would have been meritorious." See *Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019). Rather, Plaintiff asserts that the trial court rejected his habeas corpus application because of his appointed counsel's errors and ineffective assistance. [doc. # 12, pp. 10-11].

Second, to the extent Plaintiff claims that his lack of access to the library affected his ability to research the arguments he raised in the habeas corpus application, "there is no constitutional right to 'be able to conduct generalized research.'" *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014) (quoting *Lewis,* 518 U.S. at 351) (reasoning that the plaintiff's "motion alleged that the library's deficiencies would cause immediate harm to his case, [but] he did not specify how the case would be harmed. For example, he did not allege that he was unable to draft an adequate complaint or other pleading without the missing volumes."). There is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351.

Third, Plaintiff has not been convicted yet: he filed the habeas corpus action to challenge only his pre-trial detention. As stated above, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his *conviction*

11

or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Lewis*, 518 U.S. at 353 (quoting *Wolff*, 418 U.S. at 579). "[T]he right of access to the courts extends only to claims challenging a conviction, sentence, or conditions of confinement." *McIntosh v. Thompson*, 463 F. App'x 259, 260 (5th Cir. 2012). Here, Plaintiff's habeas corpus application did not challenge a conviction, and it did not amount to a civil rights action. See *Lewis*, 518 U.S. at 355 (explaining that an inmate only requires access-to-court tools to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

Fourth, even assuming that the right of access to courts includes the right to challenge pre-trial detention alone,[6] Plaintiff maintains that his habeas corpus application is pending on appeal before the state appellate court. In this respect, his access-to-court claim is premature because he has not yet lost his underlying habeas corpus action. See *Eason*, 73 F.3d at 1328 ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). In other words, because his application is pending on appeal, he can still obtain the relief he seeks. Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." See *Waller* 922 F.3d at 602 (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the

---

[6] See *id.* at 351 ("[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present *claimed violations of fundamental constitutional rights* to the courts.") (emphasis supplied and internal quotation marks and quoted source omitted).

12

plaintiffs' underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[7]

Fifth, Plaintiff maintains that his appointed counsel adopted his pro se application for writ of habeas corpus, objected when the trial judge denied the application, assisted with the application, and gave notice of intent to appeal. [doc. # 12, pp. 10-11]. Thus, Plaintiff has and had access to the courts through his attorney. See *Loden v. Hayes*, 208 F. App'x 356, 360 (5th Cir. 2006) (finding that Loden had access to the courts through his attorneys because his counsel "brought at least one of Loden's claims to the attention of the judge in Loden's criminal trial.") (citing *Lewis,* 518 U.S. at 351 (1996) ("[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.")).[8]

Finally, Plaintiff fails to state a claim on which relief may be granted because he requests only compensatory relief. Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory

---

[7] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

[8] While Plaintiff maintains that his counsel is "deliberately sabotaging [his] case in every aspect," [doc. # 12, p. 11], the Fifth Circuit has held that even an inmate who rejected the assistance of his court-appointed attorney "had no constitutional right to access a law library in preparing the pro se defense of his criminal trial." *Degrate v. Godwin,* 84 F.3d 768, 769 (5th Cir. 1996).

13

damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). Here, Plaintiff does not allege that he suffered a physical injury—or any other injury compensable by monetary relief—because he lacked access to either the law library or other means by which to research the law. Rather, Plaintiff alleges: "the denial of case law . . . has caused humiliation, embarrassment, emotional distress, emotional suffering, and mental anguish . . . ." [doc. # 12, p. 3].

The Court should dismiss these access-to-court claims.

**4. Victim's Rights Assistance**

Plaintiff alleges that, on July 20, 2018, he requested "'Victims Rights Assistance'" for his mental anguish following the attack, but he was "denied this right." [doc. # 1, p. 4]. He alleges in his second amended pleading that he requested "Victims Rights Assistance" from Warden Lee via letter. [doc. # 12, p. 1]. Plaintiff attaches a letter, addressed "to whom it may concern," in which he asked "the proper authorities to be notified that [he was] requesting R.S. 46:1843 eligibility of victim, and R.S. 46:1844 basic rights for victim be applied to [him] because of the recent attack [he] suffered on July 17, 2018 . . . .[sic]." [doc. # 12-2, p. 3].

To the extent Plaintiff seeks relief solely for the warden's alleged violation of LA. REV, STAT. §§ 14:1843 and 14:1844, Plaintiff does not state a plausible claim. Rather, Plaintiff merely alleges that Warden Lee violated a state statute, which alone is not a cognizable claim "under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

That said, Plaintiff explains that Victim's Rights Assistance includes mental health care and counseling. [doc. # 12, pp. 2, 5, 7]. In that respect, he alleges that, following the July 17, 2018 attack, he suffered mental anguish and was thereafter "denied mental health counseling . . .

14

." *Id.* at 2. Further, because he was "denied mental health counseling[,]" he suffered humiliation, embarrassment, emotional distress, emotional suffering, and mental anguish. *Id.* at 2, 7. In other words, Plaintiff claims that the warden denied him medical care for his mental health.

For relief, Plaintiff requests only compensatory/monetary relief. As above, 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

Here, Plaintiff does not allege that, because the warden denied care for his mental health, he suffered a physical injury.[9] Plaintiff may not recover compensatory damages for his mental or emotional injuries. See *Edler v. Hockley Cty. Comm'rs Court*, 589 F. App'x 664, 670 (5th Cir. 2014) (finding that the district court "properly dismissed [the plaintiff's] claims of inadequate psychological care because . . . he did not suffer physical injury.").[10] The Court should dismiss this claim.

---

[9] While perhaps unnecessary to highlight, Plaintiff does not allege that, to treat the physical injuries he sustained following the attack, he required care for his mental health.

[10] See also *Powell v. Washington*, 720 F. App'x 222, 229 (6th Cir. 2017) ("Powell claims that the defendants were deliberately indifferent to his psychiatric or psychological needs by continuing to confine him in administrative segregation despite his complaints that it was causing his mental health to deteriorate. Powell has not alleged that he sustained a physical injury that resulted from his confinement in administrative segregation; therefore, he cannot recover damages for any psychological injury he allegedly suffered from his detention.").

**5. Supervisory Official**

Turning to Plaintiff's remaining claims,[11] he faults Warden Lee because Lee "is responsible for the operation 'and the method or manner of functioning' of the detention center." [doc. # 8-1, p. 3]. He alleges further, "Warden Chad Lee is responsible for these acts, he has total control of what happens here at Franklin Parish Detention Center and the conduct of his employees." [doc. # 12, p. 1]. Warden Lee "is responsible for the safety and welfare of each person detained at the Franklin Parish Detention Center." *Id.* at 6.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

Here, Warden Lee cannot be vicariously liable for the actions of his subordinates. As Plaintiff does not otherwise allege in his remaining claims that Warden Lee participated in a constitutional deprivation or implemented a policy so deficient that it deprived Plaintiff of his constitutional rights, the Court should dismiss Plaintiff's remaining claims.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Greg Stevens' claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

---

[11] Plaintiff claims, suggests, or implies: (1) that he was not protected from the three convicted inmates who attacked him on July 17, 2018; (2) that he was confined "in the hole for twenty-five days" even though he was not sentenced to the hole; (3) that, in the hole, he was forced to use the toilet near others who could reach and view him, he was "hardly ever let out," and he endured crowded, deplorable, unsanitary, and freezing conditions; (4) that, for 33 hours following the attack on July 17, 2018, he was denied medical care for his physical injuries; and (5) that a nurse practitioner who treated him did not look at the cut on his head "more closely."

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for appointed counsel and request to "order someone to get [his] phone records," [doc. # 8, p. 2], be **DISMISSED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the period authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of September, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE